# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

      v.                                                                                                          No. 15-CR-3394 WJ

FIDAL ABDELJAWAD,

      Defendant.

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE
and
ORDER TO SHOW CAUSE WHY RESPONSE AND REPLY BRIEFS
SHOULD NOT BE UNSEALED.**

THIS MATTER comes before the Court upon Defendant's Motion for Compassionate Release, filed May 19, 2020 **(Doc. 179)**. Having reviewed the parties' briefing and the applicable law, the Court finds that Defendant's motion is not well-taken and, therefore, is denied. The Court also orders parties to show cause why the response and reply should not be unsealed.

## BACKGROUND

On May 5, 2017, a jury found Defendant guilty on all counts in a four-count Indictment charging him with conspiracy to possess and distribute, with intent to distribute synthetic cannabinoids, in violation of 21 U.S.C. § 846, §841(a)(1) and §841(a)(1).

In this counseled motion, Defendant seeks compassionate release pursuant to 18 U.S.C. §3582(c)(1)(A)(i) and to reduce his sentence to time served. In the alternative, he would not object to this Court modifying the term of supervised release to include home detention for the period of time equal to the remaining term of incarceration he would serve without this Court's modification

order. Defendant seeks to finish the remaining portion of his prison sentence on home confinement in order to protect himself and others from the spread of the novel coronavirus 2019 ("COVID-19"). Defendant's plan, if released, is to reside with his brother and his wife and self-quarantine for 14 days following release.

## DISCUSSION

### I.  Compassionate release – 18 U.S.C. §3582

Defendant claims that his age and various health conditions provide an extraordinary and compelling basis for sentence reduction in light of the COVID-19 pandemic.

The Court may grant compassionate release for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i). Before the First Step Act of 2018, Pub. Law 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018) was enacted, only the Bureau of Prisons ("BOP") could seek compassionate release. As amended, § 3582(c)(1)(A)(i), now permits courts to consider motions filed by the defendant if "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]"

### A.  Defendant Has Not Fully Exhausted Under 18 U.S.C. §3582(c)(1)(A)

Defendant submitted a hand-written request for home confinement to his case manager on April 8, 2020 based on the following "medical vulnerabilities: hypertension, asthma, prostate issue, PTSD, depression, anxiety, insomnia, sleep apnea. On April 16, 2020, Defendant's attorney also submitted a request for compassionate release to the warden of the Florence Federal Correctional Institution. Doc. 179-1 (ex parte). On May 28, 2020, after considering these requests and Defendant's medical condition, the warden found that his medical condition did not meet

established criteria for home confinement or compassionate release and denied his requests. Doc. 180-2 (ex parte).

Defendant claims that he has exhausted under the statute because more than 30 days have passed since the warden of FCI Florence received Defendant's request for release. The Court finds that Defendant has not exhausted all administrative remedies for purposes of "full" exhaustion under §3582(c)(1). *See also United States v. Read-Forbes*, No. CR 12-20099-01-KHV, 2020 WL 1888856, at *3 (D. Kan. Apr. 16, 2020) (discussing administrative exhaustion as a jurisdictional requirement). To effectively exhaust under § 3582, a prisoner must make an initial request for compassionate release under 28 C.F.R. § 571.61, and then must appeal a denial pursuant to § 571.63(a) (inmate "may appeal the denial" of a request for compassionate release). *See* § 3582(c)(1)(A); *see also* 28 C.F.R. § 571.60–571.64 (Procedures for the Implementation of 18 U.S.C. § 3582(c)(1)(a)). Only a denial by the BOP Director is considered a "final administrative decision." §571.63(c).

Defendant appears to construe the 30-day "lapse" in the statute as a waiting period, but this construction ignores the language requiring that a defendant "*fully exhaust[] all administrative rights to appeal* a failure of the [BOP] to bring a motion on the defendant's behalf." (emphasis added). In the context of the statute, the "lapse of 30 days" refers to a complete absence of response by the warden—not simply a late response. Treating it otherwise makes the alternative of appeal superfluous; a defendant could simply wait out 30 days from receipt of his request, regardless of whether there is a response. Also, the express language of the provision encompasses an "appeal" of the BOP's decision. *See Baty v. Williamette Ind.,* 172 F.3d 1232, 1245 (10th Cir. 1999) (language of statute itself "must ordinarily be regarded as conclusive). Thus, while appeal is not mandated, Defendant was required to appeal the warden's response to the BOP if he wished to

seek direct judicial relief. *See* 18 C.F.R. §571.63(c) (denial of inmate's request by BOP Director constitutes "final administrative decision').

The Court has no authority to excuse a failure to comply with the mandatory statutory exhaustion requirement. *See United States v. Gonzalez*, No. 18-CR-00130-PAB, 2020 WL 1905071, at *2 (D. Colo. Apr. 17, 2020) ("[T]he Supreme Court has made clear that 'mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion.'" (quoting *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016))); *Read-Forbes*, 2020 WL 1888856, at *4 (citing *Malouf v. Sec. & Exch. Comm'n*, 933 F.3d 1248, 1256 (10th Cir. 2019)). Because Defendant has not shown that he has exhausted his administrative remedies, the Court is precluded from granting his request for release.[1]

   B.  <u>Defendant's Request Would Not Be Granted on the Merits</u>

Even assuming the exhaustion requirement in §3582(c)(1)(A) is not a jurisdictional requirement, Defendant still cannot obtain the requested relief.

Defendant seeks to invoke the provisions of § 3582 that authorize a district court to grant a defendant compassionate release where "extraordinary and compelling reasons warrant such a reduction." §3582(c)(1)(A)(i). Relief is available where the proposed sentence reduction is supported by: (1) "extraordinary and compelling reasons;" (2) "applicable policy statements issued

---

[1] Courts appear split on whether the exhaustion requirement is jurisdictional or merely a claims-processing rule. *See United States v. Gamboa*, No. CR 09-1741 JAP, 2020 WL 3091427 (D.N.M. June 11, 2020) (Parker, J.) (citing cases). The Tenth Circuit has not yet decided this issue, but this Court is persuaded by the reasoning in *Read-Forbes* that the exhaustion requirement is indeed jurisdictional and that the Tenth Circuit would conclude as such. Many other courts in this Circuit have concluded likewise. *See United States v. Davis*, No. 19-CR-64-F, 2020 WL 2465264, at *2–3 (D. Wyo. May 13, 2020). However, even assuming the requirement is a claims-processing rule, the Court would nonetheless deny Defendant's motion for failure to exhaust, because courts are obligated to enforce such rules when raised by the Government. *Read-Forbes*, 2020 WL 188856, at *4 (citing *Eberhart v. United States*, 546 U.S. 12, 19 (2005)). Because of the split on the exhaustion issue, the Court proceeds to address the next part of the inquiry.

by the Sentencing Commission[;]" and (3) "the factors set forth in 18 U.S.C. § 3553(a)." 18 U.S.C. § 3582(c)(1)(A)(i).  *United States v. Willis*, 382 F. Supp. 3d 1185, 1187 (D.N.M. 2019).

The applicable policy statement here is USSG § 1B1.13 (Reduction in Term of Imprisonment under 18 U.S.C. § 3582(c)(1)(A)). With respect to the first requirement, the policy statement provides examples of "extraordinary and compelling reasons" only in the application notes. The examples generally fall into four categories based on a defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced age and deteriorating health combined with the amount of time served, or (4) compelling family circumstances. U.S.S.G. § 1B1.13 comment. n.1(A)-(C). *Willis,* 382 F.Supp.3d at 1187.  The application notes also include a fifth catch-all provision for "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" as determined by the Director of the Bureau of Prisons.  U.S.S.G. § 1B1.13, n.1(D).[2]

The second requirement—that the reduction is consistent with Sentencing Commission policy—focuses on community safety. The Guidelines provide that compassionate release is appropriate only where the "defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Relevant factors include the nature of the offense, the history and characteristics of the defendant, and the nature of the danger. *Id.* (incorporating the 18 U.S.C. § 3142(g) factors). *Id.*

The bulk of Defendant's motion is devoted to information on the coronavirus—including articles and websites providing statistics on deaths resulting from the virus and arguments as to

---

[2] Defendant makes the argument that application note 1(D) of the §1B1.13 policy statement is no longer applicable to §3582 due to the First Step Act statute which amended 18 U.S.C. §3582(c)(1)(A), and which now allows defendants to seek modification of sentences directly from the Court after fully exhausting all administrative rights from BOP.  *See* Publ. L. No. 226-391, §603, 132 Stat. 5194, 5238-40 (2018); *United States v. Brown*, 411 F. Supp. 3d 446, 449-50 (S.D. Iowa 2019) (citing cases). This argument changes nothing in the Court's analysis since Defendant would not be eligible under any of the provisions even with the Court making the determination instead of BOP.

why overcrowded prison facilities cause inmates to be particularly vulnerable to the spread of COVID-19. The Court is well-advised of the impacts of the COVID-19 pandemic on the prison population generally but is more concerned with whether this particular Defendant meets the criteria for release as set forth under the statute. The Court therefore does not give much weight to Defendant's references to statistics regarding facilities in other states and citations to other courts around the country approving compassionate release for certain defendants who meet the §3582 criteria.

Defendant notes that the Center for Disease Control ("CDC") has clarified that COVID-19 is especially dangerous for both older people and people with severe chronic medical conditions. However, neither Defendant's age nor his health conditions expose him to a higher risk of injury from COVID-19.

### 1. *Defendant's Age*

Defendant's age does not constitute an extraordinary and compelling reason to reduce his sentence. The CDC reports that 8 out of 10 COVID-19 deaths reported in the United States have been in adults 65 years and over. Thus, the CDC's advisement regarding the heightened risk to adults 65 year and older—even greater risk to individuals over 85—and so does not apply to Defendant, who is a 53 year-old individual. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html. Similarly, Defendant's age does not qualify as an extraordinary and compelling reason under §3582's policy statement, either. The application note for §1B1.13 requires that a defendant (i) be "at least 65 years old"; (ii) that he is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) that he has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less. §1B1.13, n.1(B). Defendant was born on June 18, 1967, and will turn 53 years old on June 8, 2020.

By his projected release on September 12, 2026, he will have attained the age of 59 years, which is still under the higher risk age category under CDC guidelines.

        2.        *Defendant's Health Conditions*

Defendant claims he runs a "high risk" of serious illness or death if he contracts COVID-19. He is 53 years old and has been diagnosed with high blood pressure, high cholesterol, sleep apnea, stomach and esophagus problems; chronic asthma for which he is treated with Furoate and Albuterol. Fifteen years ago, he underwent a heart catheterization. Defendant also claims that a physician at FCI Florence suspects that Defendant has a tumor "of unknown etiology" behind his left ear.

The CDC guidelines[3] list certain medical conditions for which individuals *are* at increased risk of severe illness from COVID 19, for example:

- chronic kidney disease;
- COPD (chronic obstructive pulmonary disease); and
- serious heart conditions (heart failure, coronary artery disease or cardiomyopathies).

In contrast, individuals with other conditions *might be* at an increased risk for severe illness from COVID-19, such as moderate-to-severe asthma and hypertension (high blood pressure). *Id.* (emphasis added).

While not minimizing Defendant's medical conditions, they do not place him at extraordinary risk from COVID-19. According to the Presentence Report ("PSR"), these conditions have been treated. *See* Doc. 116, ¶69 (describing treatment and prescribed medications for stomach/esophagus problems, high blood pressure, insomnia, sleep apnea and strep throat while in custody). The heart catheterization was done years ago. At the time the PSR was done

---

[3] Available at: CDC, People Who Are at Higher Risk for Severe Illness, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited July 14, 2020) (emphasis added).

in July 2017, Defendant could not recall his diagnosis at the time nor did he report any lingering heart problems. *Id.*

BOP records indicate that Defendant first presented with complaints of asthma in March 2020 during a follow-up visit to a medical provider about other matters where Defendant complained of shortness of breath that worsened when he had a cold the previous month. *See* Doc. 180 at 12 (attached medical report). The physical examination revealed no abnormalities and his pulmonary system was found to be clear. However, while the PSR describes several medical conditions disclosed by Defendant, it contains no indication that he suffered from asthma or had a history of asthma and BOP records likewise do not contain any mention of asthma or history of asthma before March 31, 2020. In the reply, Defendant suggests that the Government implies that Defendant "faked" asthma in order to file this motion. Doc. 182 at 4. The Court did not read the Government's brief the same way, and understood the Government to mean that Defendant's asthma was not a serious enough condition to warrant compassionate release based in part on BOP records indicating that he had not asked for an inhaler prior to March of 2020.

Finally, Defendant claims that a physician at the Florence Federal Correctional Institutions suspects that he has a tumor of unknown etiology behind his left ear. Defendant claims he is seeking copies of his medical records, but there is no expectation that these records would persuade the Court that release is warranted. Defendant's physical examination on March 31, 2020 does not report any nodule or artifact behind Defendant's left ear and there is no reason at this point to suspect that a nodule would expose Defendant to a higher risk of COVID-19.

These health issues do not constitute extraordinary and compelling reasons to reduce Defendant's sentence essentially to time-served. None of these conditions "substantially diminish" Defendant's ability to provide self-care within FCI Florence—a showing which is

required under §3582's policy statement for physical conditions. Even taking into consideration the specific risks associated with COVID-19, these conditions do not place Defendant at higher risk of severe illness from COVID-19. The CDC lists moderate-to severe asthma and hypertension as underlying medical conditions where individuals "*might* be at an increased risk for severe illness from COVID-19." Defendant uses prescription oral inhalers for his sporadic episodes of asthma and takes prescription medical to control his hypertension. Thus, Defendant has not presented a basis for the Court to reduce his sentence under §3582.

**II.    Home Confinement**

As an alternative to his request for a modification of sentence, Defendant requests a modification of the term of supervised release to include home detention to for the remaining term of incarceration, under §12003(b)(2) of the CARES Act - The Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281 (2020).

The BOP designates the place of defendant's imprisonment. See 18 U.S.C. § 3621(b). The Court does not have authority to dictate placements to the BOP. *See United States v. Cosby*, 180 F. App'x 13  (10th Cir. 2006).  Under the CARES Act and based on the Attorney General's declaration that the COVID-19 pandemic will materially affect BOP functioning, the BOP Director may "lengthen the maximum amount of time for which [he] is authorized to place a prisoner in home confinement" under Section 3624(c)(2). Pub. L. 116-136, § 12003(b)(2); *see* Memorandum from Attorney General William Barr to Director of BOP, Apr. 3, 2020, at 1, https://www.justice.gov/file/1266661/download (last visited June 1, 2020) (finding pursuant to CARES Act that because of COVID-19, emergency conditions are materially affecting the functioning of the BOP).

However, the CARES Act does not authorize the Court to release an inmate on home detention or to review the BOP's decision not to do so. *See United States v. Read-Forbes*, No. CR 12-20099-01-KHV, 2020 WL 1888856, at *5 (D. Kan. Apr. 16, 2020) ("While the CARES Act gives the BOP broad discretion to expand the use of home confinement during the COVID-19 pandemic, the Court lacks jurisdiction to order home detention under this provision."); *United States v. Edwards*, No. 17-40093-01-DDC, 2020 WL 2836991, at *1 (D. Kan. June 1, 2020) (Under CARES Act, only the BOP is statutorily authorized to release prisoners to home confinement).

Because the Court lacks authority to designate the place of a prisoner's confinement, the Court must deny Defendant's request for release to home confinement. [4]

### III.    Eighth Amendment

Defendant mentions in passing that his continued incarceration conflicts with the Eighth Amendment's prohibition on cruel and unusual punishment and was not considered when he was sentenced in September 2017 because the COVID-19 pandemic did not exist at that time. When considering an alleged Eighth Amendment violation, courts "look to whether the harm suffered rises to a level 'sufficiently serious' to be cognizable under the Cruel and Unusual Punishment Clause." *Mata v. Saiz*, 427 F.3d 745 (10th Cir. 2005) (quoting *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). Defendant does not allege that the BOP has failed to implement the necessary prophylactic measures to shield Defendant from COVID-19. On the contrary, it has been documented that the BOP has taken such measures, such as: suspending social visits;

---

[4] According to the Government, while there have to date been no COVID-19 infections in the Florence Federal Correctional Institution, there have been 1,499 confirmed COVID-19 cases and 72 COVID-19 deaths in Bernalillo County through June 2, 2020. Defendant does not address the fact that his risk of exposure to COVID-19 is statistically greater if he were to be released from custody and return to his home. The Court would also note here that Defendant does not allege the BOP has neglected its duties or rendered inadequate care for his stated health conditions.

10

restricting legal visits; limiting inmate movement; and implementing proactive testing of inmates to mitigate the transmission of COVID-19:

> But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread. *See* generally Federal Bureau of Prisons, COVID-19 Action Plan (Mar. 13, 2020, 3:09 PM), https://www.bop.gov/resources/news/20200313_covid-19.jsp.

*United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020); *accord United States v. Little*, No. CR 14-195 KG, 2020 WL 2736944, (D.N.M., May 26, 2020). Further, all incoming inmates are quarantined and tested before being placed in their designated facilities. *See Wilson v. Williams*, 961 F.3d 829 (6th Cir. 2020) (medically-vulnerable federal prisoners were not likely to succeed on merits for injunctive relief where officials understood the serious risks posed by COVID-19 and they responded reasonably by implementing a six-phase plan to mitigate the risk of COVID-19 spreading widely at prison, even if their response did not completely prevent COVID-19 from spreading).[5]

Accordingly, Defendant has not shown that the BOP's conduct impinges on his Eighth Amendment rights in that his incarceration at FCI Florence constitutes cruel and unusual punishment.

## IV.   Filing of Sealed Pleadings

The response and reply were both filed under *ex parte* and under seal, apparently because the brief contains Defendant's health information. The response also includes a medical report from a lung xray, and the reply attaches several records of clinical encounters. This information

---

[5] Defendant cites to cases involving exposure to tobacco smoke and asbestos. *See, e.g., Helling v. McKinney*, 509 U.S. 25, 28 (1993); see also Wallis v. Baldwin, 70 F.3d 1074, 1076 (9th Cir. 1995) (applying Helling to exposure to asbestos). However, these cases are not relevant here where the BOP has instituted measure to mitigate possible risks of contracting COVID-19 among inmates.

is not automatically subject to sealing under the federal procedural rules. *See* Fed.R.Crim.P. 49.1 (Privacy Protection for Filings Made with the Court).

The public generally has a right to access court records. *See United States v. McVeigh*, 119 F.3d 806, 811 (10th Cir. 1997) ("It is clearly established that court documents are covered by a common law right of access") (citing *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 599 (1978)). A party seeking to file court records under seal must overcome a presumption, long supported by courts, that the public has a common-law right of access to judicial records." *Williams v. FedEx Corp. Servs.*, 849 F.3d 889, 905 (10th Cir. 2017) (cited case omitted). The moving party "must articulate a real and substantial interest that justifies depriving the public of access to the records that inform our decision-making process." *Id.* at 1135–36 (internal quotation marks omitted); *see* CM/ECF Adm. Proc. Manual, ¶9(h)(1) & (2) (leave of Court required to file documents under seal except under Fed.R.Civ.P.5.2(F), Fed.R.Crim.P 49.1 or statute).  Here, however, neither party has sought Court approval before filing the response and reply briefs under seal.

The Court has been overrun with requests for release from detention or imprisonment because of the COVID-19 pandemic, and most of these requests necessarily mention a defendant's specific medical conditions which allegedly make them more susceptible to becoming infected with the virus. If every pleading in motions of this type were sealed, public access to Court documents would become the exception rather than the norm.

Accordingly, within **FOURTEEN (14) DAYS of this Order**, parties are to advise the Court as to why the Response and Reply (Doc. 180 Ex Parte) and Doc. 182 (Ex Parte) and its attached exhibits should not be unsealed.  Should the parties wish the documents to remain sealed and in the event the Court grants this request, parties will be required to file redacted versions of

the documents for public viewing. Failure to timely respond to the Order will result in the unsealing of the documents.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Compassionate Release **(Doc. 179)** is hereby DENIED for reasons described in this Memorandum Opinion and Order;

**IT IS FURTHER ORDERED** that parties are required to show cause as to why the response and reply (Docs 180 and 182) and attached exhibits, should not be unsealed as described above, and are required to respond to this Order within fourteen (14) days of the entry of this Order.

_____
CHIEF UNITED STATES DISTRICT JUDGE